Jerry L. Steering (SBN 122509)
Law Offices of Jerry Steering
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerrysteering@yahoo.com
Attorney for Plaintiff Rogelio Reyes

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO REYES,<br><br>       Plaintiff,<br><br>       vs.<br><br>CITY OF SANTA ANA, KAMERON HENDERSON, MATTHEW D. WHARTON, DAVID GUZMAN, JUSTIN L. COLLINS, JONATHON PEREZ, ANH TU S. PHAN, KENNETH GRAY, DANIEL CARRILLO and DOES 1 through 10, inclusive,<br><br>       Defendants. | Case No.: 8:18-cv-1537 DOC (ADS)<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) FEDERAL CONSTITUTIONAL CLAIMS FOR VIOLATION OF FOURTH AMENDMENT RIGHTS – UNLAWFUL / UNREASONABLE SEIZURE OF PERSON; VIOLATION OF FOURTH AMENDMENT RIGHTS USE OF EXCESSIVE / UNREASONABLE FORCE UPON PERSON; VIOLATION OF FOURTH AMENDMENT RIGHTS UNREASONABLE / UNLAWFUL ENTRY INTO AND SEARCH AND SEIZURE OF PRIVATE RESIDENCE; AND CALIFORNIA STATE LAW CLAIM FOR FALSE ARREST / FALSE IMPRISONMENT, BATTERY, TRESPASS TO A PRIVATE RESIDENCE AND VIOLATION OF CALIFORNIA |

CIVIL CODE 52.1 FOR EXCESSIVE FORCE

**COMES NOW** plaintiff Rogelio Reyes and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the City of Santa Ana, County of Orange, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

3.      As plaintiff's claims brought under California state law arise out of the same transactions and occurrences and out of a common nucleus of operative facts as the plaintiff's federal questions claims, this court has jurisdiction over the plaintiff's California state law claims under its Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367, and otherwise pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

## GENERAL ALLEGATIONS

4.      Plaintiff Rogelio Reyes, hereinafter referred to as "ROGELIO REYES" and/or "plaintiff" and/or "REYES" is a natural person, who, at all times

SECOND AMENDED COMPLAINT FOR DAMAGES

2

complained of in this action, resided in the State of California.

5.      Defendant City of Santa Ana ("CITY") is a municipal entity located in the County of Orange, State of California; within the territorial jurisdiction of this court.

6.      Defendant Kameron Henderson hereinafter also referred to as "HENDERSON", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

7.      Defendant Matthew D. Wharton, hereinafter also referred to as "WHARTON", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer and a patrol Sergeant and Supervisor, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

8.      Defendant David L. Guzman hereinafter also referred to as "GUZMAN", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

9.      Defendant Justin L. Collins, hereinafter also referred to as "COLLINS", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

10.     Defendant Jonathon Perez hereinafter also referred to as "PEREZ", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

11.     Defendant Anh Tu S. Phan hereinafter also referred to as "PHAN", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

12.     Defendant Kenneth Gray hereinafter also referred to as "GRAY", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

13.    Defendant Daniel Carrillo, hereinafter also referred to as "CARRILLO", is, and at all times complained of herein, was, a City of Santa Ana Police Department Police Officer, acting as an individual person under the color of state law, in his individual capacity, and was acting in the course of and within the scope of his employment with defendant CITY.

14.    Defendants DOES 1 through 6, inclusive, are sworn peace officers and/or police officers and/or investigators and/or Special Officers and/or some other public officer and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or some other employee of defendant CITY and/or the City of Santa Ana Police Department, who are in some substantial way liable and responsible for, or otherwise caused or participated in, and/or failed to supervise and/or intervene in and stop and/or prevent the actions complained of by the plaintiff in this instant action. DOES 1 through 10, inclusive, are natural persons whose identities are presently unknown to plaintiff, who, therefore, sue these persons by the fictitious name DOE.

15.    At all times complained of herein, DOES 1 through 6, inclusive, were acting pursuant to their authority as sworn peace officers and/or police officers and/or investigators and/or Special Officers and/or some other public officer and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or some other employee of defendant CITY and/or the City of Santa Ana

Police Department, who are in some substantial way liable and responsible for, or otherwise caused or participated in, and/or failed to supervise and/or intervene in and stop and/or prevent the actions complained of by the plaintiffs in this instant action were acting in the course of and within the scope of their employment with defendant CITY, and as individual persons, acting under the color of state law. Plaintiff will amend his complaint to show the true identities of DOES 1 through 10, inclusive, when he becomes aware of said identities.

16.     Defendants DOES 7 through 10, inclusive, are sworn peace officers and/or the Chief and/or Assistant Chiefs and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials with the City of Santa Ana Police Department and/or defendant CITY, who are in some substantial way liable and responsible for, or otherwise caused the actions complained of by plaintiffs in this action, such as via Supervisory Liability (i.e. failure to properly supervise, improperly directing subordinate police officers, approving unlawful actions of subordinate police officers, failing to intervene in and stop unlawful actions of their subordinates), and/or, such as the failing to properly train City of Santa Ana Police Department personnel in the use of force, and/or by causing / creating the policies, customs and practices of the City of Santa Ana Police Department that resulted in the actions by the defendant police officers complained of in this instant action.

SECOND AMENDED COMPLAINT FOR DAMAGES

6

17.     At all times complained of herein, DOES 7 through 10, inclusive, were acting pursuant to their authority as the Chief and/or Assistant Chiefs and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials with the City of Santa Ana Police Department and/or otherwise with CITY, and/or some other public official(s) with defendant CITY, and were acting in the course of and within the scope of their employment with defendant CITY, and were acting as individual persons acting under the color of state law. Plaintiffs will amend his complaint to show the true identities of DOES 1 through 10, inclusive, when he becomes aware of said identities.

18.     Moreover, at all times complained of herein, defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the City of Santa Ana Police Department / CITY, for, inter alia, for: 1) for using excessive / unreasonable force on persons, including improvidently point their guns at civilians;  2) for unlawfully seizing (detaining and arresting) persons; 3) for unlawfully searching persons and their property; 4) for unlawfully seizing private property and for ejecting persons from private residences and for unlawfully searching  private residences; 5) for fabricating /

destroying / concealing / altering evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other police officers and supervisory personnel from civil, administrative and criminal liability; 6) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; 7) for interfering with persons' rights to remain in their private residences; 8) for covering-up unlawful and tortious conduct by City of Santa Ana Police Department personnel, and 9) for performing unlawful warrantless searches of private residences, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained of below by the plaintiff in this action.

19.    In addition, defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiff his federal constitutional and statutory rights, and California constitutional and statutory state law rights, as described above and below, and acted in joint and concerted action to so deprive the plaintiff of those rights as set forth below; all in violation of 42 U.S.C. § 1983 and otherwise in violation of California state law.

20.    Said conspiracy / agreement / understanding / plan / scheme / joint

SECOND AMENDED COMPLAINT FOR DAMAGES

8

action / concerted action, above-referenced, was a legal cause the violation of the plaintiff's federal and state constitutional and statutory rights, as set forth below.

### FIRST CAUSE OF ACTION
**[VIOLATION OF 42 U.S.C. § 1983]**
**Violation of Fourth Amendment Rights**
**UNREASONABLE SEIZURE OF PERSON –**
**ARREST WITHOUT PROBABLE CAUSE**
*Monell*[1] **Liability**
**(By Plaintiff against Defendant City of Santa Ana)**

21.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 20, inclusive, above, as if set forth in full herein.

22.     Plaintiff Rogelio Reyes (hereinafter "Rogelio" or "plaintiff" or "Rogelio Reyes") is a professional artist who lives in Santa Ana, California with his wife, Lorena, and their infant daughter.

23.     On January 12, 2018, around 8:00 p.m., plaintiff was returning home from running errands in Santa Ana, California.

24.     Plaintiff drove home on Ramona Drive—a street near his apartment on Columbine Avenue. While driving on Ramona Drive, plaintiff accidentally collided with the corner of a parked Scion XB.

25.     As plaintiff prepared to exit his vehicle in order to examine the extent

---

[1] *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

SECOND AMENDED COMPLAINT FOR DAMAGES

of the damage, he was approached by a man who identified himself as the husband of the Scion XB's owner.

26.    Plaintiff later learned that this man's name was Obed Reyes[2].

27.    As plaintiff searched for auto insurance information to provide to Obed Reyes, he realized that he had left his insurance documents in his other car—a Honda Civic—which was parked near his apartment.

28.    Plaintiff informed Obed Reyes of this, and they decided that Obed Reyes would follow plaintiff, driving separate cars, as plaintiff retrieved his auto insurance documents.

29.    They proceeded in separate cars toward the direction of plaintiff's home.

30.    As plaintiff was driving en route to his home, his car began having problems. Plaintiff pulled over near the intersection of Flower and MacArthur to examine the damage to his vehicle.

31.    Obed Reyes pulled over as well in the same area.

32.    When plaintiff exited his vehicle, he noticed that it was dark.

33.    Plaintiff returned to his car to retrieve his cellular telephone, intending to use its flashlight function to illuminate the darkness.

---

[2] Rogelio is not related to Obed Reyes, and he had never met Obed Reyes prior to that night.

SECOND AMENDED COMPLAINT FOR DAMAGES

34.     Obed asked Rogelio "is that your phone?" Obed pointed toward a nearby area of pavement.

35.     Plaintiff looked over and saw what appeared to be two cellular telephones on the curb.

36.     Plaintiff informed Obed that the cellular telephones were not his.

37.     Obed walked over and picked up the cellular telephones. He showed the telephones to plaintiff.

38.     Plaintiff noticed that both of the telephones appeared to be broken or badly damaged.

39.     Plaintiff did not see what Obed did with the broken telephones, and he never say the telephones again.

40.     A short time later, plaintiff exchanged contact information with Obed, and they departed company with one another.

41.     Plaintiff returned to his home on Columbine Avenue. At that time, Lorena Reyes and her / the plaintiff's infant daughter were present in the home.

42.     Unbeknownst to plaintiff, a robbery had taken place at a Sprint Store a short time earlier.

43.     Among the alleged perpetrators were "3-4 males. . . armed w/ guns" and "a Hispanic female" who was driving "a dark colored mini cooper . . . with a white top."

SECOND AMENDED COMPLAINT FOR DAMAGES

11

44.     Although initially "none of the employees [were able to] provide a susp[ect] desc[ription]," one victim described a male suspect as "possibly black or Hispanic, about 5'08" tall and approximately 210 pounds," and another described him as a "black male, wearing a red hat, [and] grey sweatshirt."

45.     Santa Ana Police Department Officer Kameron Henderson nevertheless wrote that the two male suspects were "Hispanic."

46.     After reviewing surveillance footage, Officer Henderson determines that there are two male suspects: suspect 1 was "wearing a red fitted 'P' hat, black jacket, white shirt, black pants, and dark shoes," and suspect 2 had "short hair, medium build, diamond stud earrings in both ears, wearing a grey and red snapback hat, a black leather jacket, red, black, white, and gray, plaid shirt, and jeans."

47.     After said defendant Santa Ana Police Department police officers did their investigation of the subject robbery at the cell phone store, said officers were able to track one of the phones stolen by the robbers; a phone that was the personal phone of one of the store employees.

48.     Via the "pinging" of that store employee's cell phone, the police officers traced the phone to the home of Obed Reyes in Santa Ana, California.

49.     Thereafter, said defendant Santa Ana Police Department police officers surrounded Obed Reyes' home, and with a police helicopter hovering

SECOND AMENDED COMPLAINT FOR DAMAGES

12

over Obed Reyes' home, and via the public address system in the police officers' patrol cars, ordered all of the residents of Obed Reyes' home to exit the same.

50.     Obed Reyes, and his relatives, including his wife, his child, his parents and others, were all ordered out of their homes, at gun point, and, in the absence of a warrant, consent or an emergency.

51.     Obed Reyes told the defendant Santa Ana Police Department police officers that he found the two cell phones on the ground when he went over to plaintiff's car / plaintiff after plaintiff's car clipped Obed Reyes' wife's car.

52.     Obed Reyes told the defendant Santa Ana Police Department police officers that he first "picked up the phones on the ground and handed them to Mr. Reyes and asked if he wanted them," and that plaintiff "threw them back on the ground and said he didn't need them." Obed Reyes also told the police officers that he asked the plaintiff if those were his phones, and the plaintiff told him "No".

53.     Obed Reyes saw that the cell phones were literally lying in the gutter in the street, and, that the screens to said cell phones were shattered, and he told the police officers just that.

54.     In addition, Obed Reyes further clarified that he meant he first "picked up the phones on the ground and handed them to Mr. Reyes and asked if

SECOND AMENDED COMPLAINT FOR DAMAGES

he wanted them," and that Rogelio "threw them back on the ground and said he didn't need them."

55.    Obed Reyes also told the police officers that his cousin was the one who first found the cell phones: "No . . . my wife's cousin found them over there."

56.    Never did the defendant police officers inquire about whether plaintiff was wearing a red hat, or whether it had a "P" on it.

57.    Never did the defendant police officers inquire as to the color or style of plaintiff's clothing.

58.    Never did the defendant police officers inquire about the presence of a Mini-Cooper automobile, and they never even inquire about the plaintiff's race, ethnicity, or complexion.

59.    Nevertheless, based on Obed Reyes' identification of plaintiff's automobile, and the fact that plaintiff was present when Obed Reyes discovered the stolen cellular telephones, the defendant SAPD Officers proceeded, without a warrant, to arrest Rogelio Reyes, in his home, in the absence of a warrant, consent or an emergency, as described below.

60.    Thereafter, during this entire time that the defendant police officers were at Obed Reyes' home, plaintiff Rogelio Reyes was at his residence located at 200 West Columbine Avenue, Apartment #12, Santa Ana, California 92707.

61.    Also thereafter, based on the above and foregoing, after departing

SECOND AMENDED COMPLAINT FOR DAMAGES

14

Obed Reyes' home, defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, went to and surrounded the door at the plaintiff's home, and conspired and agreed among and between themselves to violate the plaintiff's Fourth Amendment right to be left alone in his house in the absence of a warrant, consent or an emergency by ordering him to exit his apartment at gunpoint, to take him to the Santa Ana Police Department station, to interrogate him about a robbery that took place earlier that evening in Santa Ana. California; a robbery that the plaintiff had nothing to do with whatsoever.

62.    This conspiracy and agreement among and between defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, included an agreement and understanding among and between said defendants: 1) to knock loudly at the plaintiff's front door to his apartment without identifying themselves, 2) when the plaintiff opened the door to his apartment, to then point their pistols and rifles at the plaintiff, and to order him to step outside of his apartment, 3), when the plaintiff starts to exit his apartment, to grab the plaintiff and to pull him outside of his apartment, 4) to handcuff the plaintiff and to take him to jail for interrogation, even though they did not have probable cause to believe that he committed a crime.

63.     This conspiracy and agreement among and between defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, also included them then planning on searching plaintiff's apartment and the places, objects, cabinets and furniture and containers located therein; either with (or if denied) without consent or a warrant.

64.     Thereafter, pursuant to the conspiracy among and between the defendant officers, above-described, at approximately 11:15 p.m., several officers from the City of Santa Ana Police Department, including defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, approached the plaintiff's residence, knocked on the door loudly and deliberately did not identify themselves; hoping that the plaintiff would open the door to his apartment without knowing that is was Santa Ana Police Department police officers surrounding his doorway entrance to his apartment.

65.     When the plaintiff heard the banging on his door, he looked through the peep home in the door and saw said defendant police officers outside of his entry / front door, who were holding guns pointed at the door.

66.     Believing that police officers were requiring / forcing him to open his door, he did so; standing several feet inside of his home when opening his door,

SECOND AMENDED COMPLAINT FOR DAMAGES

16

only opening the door a couple of inches; almost completely secreting himself from the officers outside of his door.

67.    Defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, pointed their guns at plaintiff, instructed him to exit the residence, pushed the door open and pulled plaintiff out of the plaintiff's apartment and handcuffing him; all in the absence of a warrant, an emergency, consent or probable cause to believe that the plaintiff had committed a serious and violent crime.

68.    Plaintiff complied with defendants HENDERSON's, WHARTON's, GUZMAN's, COLLINS', PEREZ', PHAN's, GRAY's, CARRILLO's and DOES 1 through 6, inclusive's order to him to exit his home and to show his hands, and he was yanked out of his residence and was handcuffed by said defendants.

69.    Plaintiff was told he was not under arrest by said defendants[3], and that they were investigating a "211" and/or "commercial burglary".  Defendants then ordered the plaintiff's wife, Lorena Reyes, to exit her/the plaintiff's apartment with her hands up, at gunpoint, even though she was holding their baby in her arms.

70.    Plaintiff's wife exited the apartment not fully dressed, where she was

---

[3] However, plaintiff is deemed to have been arrested at the moment that the defendant police officers ordered the plaintiff to exit his residence at gunpoint.

SECOND AMENDED COMPLAINT FOR DAMAGES

17

also detained and questioned by said defendant officers.

71.     The defendants asked the plaintiff who else was in the residence and the plaintiff indicated that no one else was present other than his wife and child.

72.     The defendants, after handcuffing the defendant, causing him extreme and unnecessary pain, asked if they could search his residence.

73.     In addition, defendant bystander and supervisory personnel who had arrived at the scene, and defendant bystander and supervisory personnel defendants WHARTON and DOES 7 through 8, inclusive, approved, encouraged and ratified the unlawful conduct of their associate and subordinate officers, under the color of law and in a bystander and supervisory capacity as Sergeant / Corporal / Watch Commander / Lieutenant / Captain  or some other supervisor that should have reasonably known that the plaintiff's constitutional rights were being violated; and failed to intervene to protect the rights of the plaintiff and prevent the plaintiff from being falsely detained and arrested in his own home when plaintiff had not committed any crime whatsoever, falsely seized and suffered substantial pain being handcuffed against plaintiff's will.

74.     After approximately 30 minutes after being ordered out of his home, the plaintiff was then placed in the back seat of a Santa Ana Police Department patrol car, all the while handcuffed and suffering substantial pain from the handcuffs.

SECOND AMENDED COMPLAINT FOR DAMAGES

18

75.     At some point, the plaintiff was removed from one police car and placed in another police car; still handcuffed and still suffering extreme pain.

76.     Approximately 30 minutes after being placed in the back seat of the Santa Ana Police Department patrol car, defendants notified the plaintiff that they were taking him down to the Santa Ana Police Station for questioning.

77.     The plaintiff's car was towed by LMD Towing, at the direction of the defendants.

78.     Once the plaintiff arrived at the Santa Ana Police Department Station driven by the defendants handcuffed in the back of a police car, the defendants had a booking photo and live scan finger prints of the plaintiff taken, and thereafter placed the plaintiff, still handcuffed, in an interrogation room at the police station where he was questioned by the defendants after they "*Mirandized*" him.

79.     Plaintiff answered all of the interrogating officers' questions and convinced said defendant SAPD Officers, including HENDERSON[4] that he was completely innocent. Plaintiff asked the interrogating the defendant SAPD officers if he was under arrest, and said defendant officers told him that they would have to make that decision and would let him know.

_____

[4] And WHARTON and/or GUZMAN and/or COLLINS and/or PEREZ and/or PHAN and/or GRAY and/or CARRILLO and/or DOES 1 through 6, inclusive.

SECOND AMENDED COMPLAINT FOR DAMAGES

80.    Plaintiff was then taken out of the SAPD interrogation room and placed on a bench at the police station.

81.    Plaintiff asked the defendants what was going on, and he was told to wait.

82.    Plaintiff was held against his will by said defendants from approximately 10:15 p.m. on January 12, 2018 to 7:15 a.m. on January 13, 2018.

83.    Finally, at 7:15 a.m. on January 13, 2018, plaintiff was released from custody of the defendants pursuant to Cal. Penal Code § 849(b)(1) as the defendants did not have sufficient grounds to believe that he committed a crime.

84.    Accordingly, said seizure of the plaintiff, as well as the unlawful entry into plaintiff's home and the unlawful search of the plaintiff's home, was done by all of defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY and DOES 1 through 8, inclusive, in violation of the plaintiff's right to be free from unreasonable seizure of his person under the Fourth Amendment to the United States Constitution, via Municipal ("Monell[5]") Liability.

85.    Moreover, at all times complained of herein, defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY,

---

[5] Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

CARRILLO and DOES 1 through 6, inclusive, were acting pursuant to the customs, policies, usages and practices of the City of Santa Ana Police Department / CITY, for, inter alia, for: 1) for arresting persons in their homes by ordering them, at gunpoint, to exit their homes, in the absence of consent, a warrant or an emergency, and 2) for pointing pistols at persons who they detain and/or arrest, when the pointing of guns at the detainee / arrestee would be / is / was the excessive threatened use of deadly force upon civilians.

86.    As a proximate result of the policies, customs, practices and usages of the City of Santa Ana as described immediately above and below, defendants HENDERSON and DOES 1 through 6, inclusive, committed the constitutional violations complained of above and below against the plaintiff.

87.    Accordingly, the unlawful seizure of plaintiff and his home and the unlawful search of plaintiff's home, by defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive, constituted an unlawful and unreasonable seizure of his person in his own home, while inside of his own home, and in the absence of reasonable suspicion of criminality afoot by the plaintiff or probable cause to believe that the plaintiff had committed a crime; in violation of his rights under the Fourth Amendment to the United States Constitution.

88.    As a direct and proximate result of the actions of defendants CITY,

SECOND AMENDED COMPLAINT FOR DAMAGES

21

HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, unlawful and unreasonable seizure of plaintiff, plaintiff Rogelio Reyes: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred litigation and other related costs, and 4) incurred the loss of business wages and profits, and 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00

## SECOND CAUSE OF ACTION
**[VIOLATION OF 42 U.S.C. § 1983]**
**Violation of Fourth Amendment Rights**
**Excessive / Unreasonable Use of Force on Person**
**(By Plaintiff against Defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 6, inclusive)**

89.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 88, inclusive, above, as if set forth in full herein.

90.     As mentioned above and in addition to the above and foregoing, when plaintiff was unlawfully detained and arrested in his own home, he was taken out of the house at gunpoint by the defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, and said defendants otherwise brutalized the plaintiff;

causing him to suffer physical pain, discomfort and physical trauma and distress, which required medical after the subject incident.

91.    The actions of defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, as complained above herein, constituted a violation of Rogelio Reyes' rights under the Fourth Amendment to the United States Constitution to be free from the use of unlawful and unreasonable and excessive force upon his person; to wit; the unjustified threatened use of deadly force upon the plaintiff (and his wife) to compel the plaintiff to exit his home.

92.    As a direct and proximate result of the actions of defendants HENDERSON and DOES 1 through 8, inclusive, plaintiff Rogelio Reyes was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses, 3) incurred lost wages and profits, and 4) suffered terrible physical injury, pain and suffering, as well as mental and emotional pain and suffering, and 5) suffered / is suffering lost wages and profits; all in an amount to be proven at trial; in excess of $5,000,000.00

93.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff Rogelio Reyes' constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in

excess of $5,000,000.00

## THIRD CAUSE OF ACTION
### False Arrest / False Imprisonment
### Under California State Law
### (By Plaintiff against Defendants CITY, HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive)

94.  Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 93, inclusive, above, as if set forth in full herein.

95.  As complained of above, plaintiff Rogelio Reyes was unlawfully seized and arrested by HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, on January 12, 2018.

96.  As complained of above, said defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, did not have probable cause to believe that plaintiff Rogelio Reyes had committed a crime.

97.    Defendants CITY, HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, are liable to plaintiff for his false arrest / false imprisonment, pursuant to Cal. Gov't Code §§ 815, 815.2, 815.6, 820, 820.2, 820.4, 820.8 and otherwise pursuant to the common law.

98.     As a direct and proximate result of the actions of HENDERSON and DOES 1 through 6, inclusive, plaintiff Rogelio Reyes was: 1) substantially physically, mentally and emotionally injured; 2) incurred medical and psychological costs, bills and expenses and 3) incurred other special and general damages, including attorney's fees, costs and 4) incurred lost profits and other associated costs and expenses; all in an amount to be proven at trial in excess of $5,000,000.00

99.     The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant CITY, in an amount to be proven at trial in excess of $5,000,000.00

**FOURTH CAUSE OF ACTION**
**Violation of Cal. Civil Code § 52.1**
**Under California State Law**
**(By Plaintiff against Defendants CITY, HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive)**

100.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 99, inclusive, above, as if set forth in full herein.

101.     As shown above, defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1

SECOND AMENDED COMPLAINT FOR DAMAGES

through 8, inclusive, used the unjustified threatened use of deadly of force against plaintiff Rogelio Reyes, to wit; the defendant police officers pointing their pistols and rifles at the plaintiff when he opened his door, and to coerce him to exit his apartment; an act that constituted a violation of said plaintiffs' rights under the Fourth Amendment to the United States and California constitutions.

102.    Said actions by said defendants constitute the use of actual force and violence, and the threatened use of force and violence against the plaintiff Rogelio Reyes for his exercise of his Fourth Amendment rights; his right to be left alone in his home, and to not be arrested in his home.

103.    Moreover, as shown above, said defendant police officers falsely arrested and falsely imprisoned plaintiff Rogelio Reyes, using actual force and violence against plaintiff Rogelio Reyes, as well as threats of same.

104.    Said defendant police officers, interfered with, and/or attempted to interfere with, by use of threats, intimidation, and coercion, the exercise or enjoyment by plaintiff Rogelio Reyes of the rights secured by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of California Civil Code §52.1.

105.    Said defendants CITY, HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, are liable to plaintiff Rogelio Reyes, for said violations of his

constitutional rights, pursuant to California Civil Code § 52.1, and California Government Code §§ 815.2(a), 815.6, 820, 820.4, 820.8 and otherwise pursuant to the common law.

106.    As a direct and proximate result of the actions of said defendants, plaintiff Rogelio Reyes was: 1) was substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00.

107.    The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant City of Santa Ana, in an amount to be proven at trial in excess of $5,000,000.00

108.    In addition, as a result of the actions of said defendants in violation of the plaintiffs' rights under Cal. Civil Code § 52.1, the plaintiffs are entitled to an award of treble compensatory damages against all defendants, and each of them in this action.

SECOND AMENDED COMPLAINT FOR DAMAGES

# FIFTH CAUSE OF ACTION
### Assault
### Under California State Law
### (By Plaintiff against Defendants CITY, HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive)

109.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 108, inclusive, above, as if set forth in full herein.

110.    The actions committed by defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, above-described, including the unjustified pointing of guns at the plaintiff, constituted an assault of plaintiff Rogelio Reyes, under California state law, as said plaintiff was unlawfully placed in reasonable fear of receiving an imminent violent injury by defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive.

111.    Defendants CITY, HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, are liable to plaintiff Rogelio Reyes under California state law for said assault of plaintiffs, pursuant to Cal. Gov't Code §§ 815, 815.2(a), 815.6, 820, 820.2, 820.4, 820.8, pursuant to the California Constitution, and otherwise

pursuant to the common law.

112.   As a direct and proximate result of the actions of defendants HENDERSON, WHARTON, GUZMAN, COLLINS, PEREZ, PHAN, GRAY, CARRILLO and DOES 1 through 8, inclusive, plaintiff Rogelio Reyes was: 1) substantially physically, mentally and emotionally injured, and suffered great physical, mental and emotional injury, distress, pain and suffering; 2) incurred medical and psychological costs, bills and expenses, 3) incurred attorney's fees and associated litigation and other related costs, and 4) incurred the loss of business wages and profits, 5) incurred other special and general damages and expenses, in an amount to be proven at trial, in excess of $5,000,000.00

113.   The actions by said defendants were committed maliciously and oppressively and constituted despicable conduct; sufficient for an award of punitive / exemplary damages against all defendants and each of them, save defendant City of Santa Ana, in an amount to be proven at trial in excess of $5,000,000.00

**WHEREFORE**, plaintiff prays for judgment as follows:

a)      For a judgment against all defendants for compensatory damages in an amount in excess of $5,000,000.00, trebled to $15,000,000.00;

b)      For a judgment against all defendants save defendant City of Santa Ana for punitive damages in an amount in excess of $5,000,000.00;

c)      For an award of reasonable attorney's fees and costs;

d)      For a trial by jury; and

e)      For such other and further relief as this honorable court deems just and equitable.

Dated: December 31, 2020                    ____/s/__ *Jerry L. Steering*_____
                                            JERRY L. STEERING, ATTORNEY FOR
                                            PLAINTIFF ROGELIO REYES

SECOND AMENDED COMPLAINT FOR DAMAGES